## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTHONY T. JOHNSON, | Civil Action No. 19-0403 (SDW) |
| **Petitioner** | |
| v. | **OPINION** |
| THE ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, et al., | |
| **Respondents** | |

**WIGENTON**, District Judge:

Presently before this Court is the amended petition for writ of habeas corpus under 28 U.S.C. § 2254 ("Amended Petition") by Petitioner Anthony T. Johnson, a New Jersey state prisoner, challenging his convictions for first-degree murder, N.J.S.A. 2C:11-3(a)(1); second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b); and second-degree possession of a handgun for an unlawful purpose, N.J.S.A. 2C:39-4(a). (ECF No. 7). Respondents oppose the Amended Petition. (ECF No. 17).[1] The proceedings were stayed on December 14, 2020 to allow Petitioner to exhaust certain claims in the state courts, (ECF No. 18), and were reopened on February 9, 2023. (ECF No. 20).

This Court will determine the Amended Petition on the briefs pursuant to Federal Rule of Civil Procedure 78(b). For the following reasons, the Amended Petition is dismissed as procedurally defaulted in part and denied in part. Petitioner is denied a certificate of appealability.

---

[1] Respondents' exhibits were filed at Docket Entry No. 17 and are referred to herein by the docket and page numbers assigned by the Court's Case Management Electronic Case Filing system, CM/ECF.

## I. BACKGROUND

On or about April 8, 2008, Petitioner was charged in a three-count indictment in the Superior Court of New Jersey, Union County with first-degree murder, second-degree unlawful possession of a handgun, and second-degree possession of a weapon for an unlawful purpose. (ECF No. 17-1 at 76-77).  The Superior Court of New Jersey, Appellate Division ("Appellate Division") made the following findings of fact on direct appeal:[2]

> Defendant's girlfriend [Shakira Hammonds] testified that she attended a barbeque with the victim [Sean Garris] at a friend's house a few weeks before the killing.  The girlfriend entered the house intending to bring food upstairs.  As she ascended the steps, the victim, who had known defendant for years, lifted up the girlfriend's skirt (the "skirt incident").  Later that night, the girlfriend told defendant what the victim had done, asked him to do something about it, but "not too long after that," the girlfriend told defendant not to worry about it.

> Two days before the shooting, defendant approached the victim and, referring to the skirt incident, told the victim to "keep his hands to himself."  Defendant indicated that he thought that the matter had been resolved, but he testified that the next day, the victim approached the girlfriend to "put [Hammonds] in her place."  The day after that, defendant killed the victim.

> Defendant testified that on the day of the murder, he went to visit his uncle who lived across the street from the victim's girlfriend's apartment building (the "building").  The victim was outside the building and called out to defendant.  The two exchanged words, and defendant attempted to enter the building so he could tell the victim's girlfriend about the skirt incident.  Defendant testified that as he walked into the vestibule of the building, the victim attacked him from behind, threw defendant against the wall, and hit defendant's body repeatedly.  As the victim wrapped his hands around defendant's neck, defendant reached for a gun from defendant's back pocket, pulled the trigger, and shot the victim in the bicep.  The bullet entered the victim's chest and he later died from internal bleeding.

---

[2] This Court defers to the state courts' factual determinations pursuant to 28 U.S.C. § 2254(e)(1) and adopts the facts as set forth by the Appellate Division in its direct appeal and collateral review opinions.

> Defendant drove away from the scene and called someone with whom defendant had previously lived [Teshawn Campbell] (the "friend"). The friend testified that defendant said he needed to talk to him. Defendant arrived at the friend's house. The friend testified that defendant did not look like he had just been in a fight, he was not bleeding, and had no marks on him. The friend also testified that defendant said, "I fucked up. I fucked up .... I shot [Garris]." He then drove defendant to work.
>
> Defendant left his place of employment and called the friend and another individual [Gurhan Gocmen] asking them to meet him near the highway and drive him to defendant's mother's home in New York. They located defendant near the New Jersey Turnpike, picked him up, and started driving. [Gocmen] testified that a minute or so later, defendant called his mother and said that "he walked up to [Garris] and shot him once in his chest."
>
> Three days later, the police arrested defendant in New York. The next day, defendant gave the police a statement admitting that he had confronted the victim, but that the victim denied the skirt incident and made fun of defendant. At first, defendant stated to the police that the victim possessed the gun, but defendant later acknowledged that defendant had the gun on him. Defendant explained that he initially lied to the police about the gun because he was "scared" and "shook" when they charged him with committing murder.

*State v. Johnson*, No. A-2101-12T1, 2014 WL 7150690, at *1-2 (N.J. Super. Ct. App. Div. Dec. 17, 2014) ("*Johnson I*") (omissions in original). A jury convicted Petitioner on all counts. (ECF No. 17-1 at 78). Petitioner moved for a new trial alleging prosecutorial misconduct during summation. *Johnson I*, 2014 WL 7150690, at *2. The trial court denied that motion and imposed a 37-year prison term with an 85 percent period of parole ineligibility. (ECF No. 17-1 at 79).

Petitioner appealed to the Appellate Division raising prosecutorial misconduct and excessive sentencing claims. (*Id.* at 2-3). The Appellate Division affirmed his convictions and sentence. *Johnson I*, 2014 WL 7150690, at *6. The New Jersey Supreme Court denied certification on July 6, 2015. *State v. Johnson*, 222 N.J. 16 (2015).

On July 28, 2015, Petitioner filed a *pro se* petition for post-conviction relief ("PCR"). (ECF No. 17-9 at 4). The PCR court appointed counsel, who filed an amended PCR petition on July 6, 2016. (ECF No. 17-10). The amended petition alleged that trial counsel was ineffective for failing to file a motion to suppress Petitioner's statement to police, failing to hire a medical expert to support Petitioner's self-defense claim, failing to perform a demonstration of the assault on Petitioner, and failing to object to the prosecutor's summation. (*Id.* at 11-14). The PCR court conducted oral argument on October 14, 2016, (ECF No. 17-41), and denied the petition without an evidentiary hearing on February 17, 2017, (ECF No. 17-42). Petitioner appealed, and the Appellate Division affirmed the PCR court's decision on October 24, 2018. *State v. Johnson*, No. A-4369-16T4, 2018 WL 5273922, at *3 (N.J. Super. Ct. App. Div. Oct. 24, 2018) ("*Johnson II*"). The New Jersey Supreme Court denied certification on May 3, 2019. *State v. Johnson*, 237 N.J. 563 (2019).

This Petition was filed on January 10, 2019. (ECF No. 1). On January 14, 2019, this Court administratively terminated this matter as Petitioner failed to file his habeas petition on the form required by the local rules. (ECF No. 2). On April 30, 2019, Petitioner refiled his habeas petition on the required form. (ECF No. 3). In his amended petition, Petitioner raised three claims of ineffective assistance of counsel, two of which were unexhausted. (*Id.* at 10). He stated that he was "in the process of filing a second Post-Conviction Relief petition to address [and exhaust] the" unexhausted claims and asked this Court to grant him a stay. (*Id.* at 12). This Court granted the stay and administratively closed the matter on May 3, 2019. (ECF No. 4).

On or about June 10, 2020, Petitioner filed two copies of an identical amended habeas petition on separate dockets. (*See* Docket No. 20-7278 at ECF No. 1; Docket No. 20-7283 at ECF No. 1). On June 22, 2020, this Court concluded the filings were intended to be filed as a request

to lift the stay and reopen this matter. (ECF No. 6). Therefore, the Clerk was ordered to close Docket No. 20-7278 and Docket No. 20-7283 and file the Amended Petition here. (*Id.* at 2). This Court also ordered Respondents to answer the Amended Petition. (*Id.* at 3).

On October 13, 2020, Petitioner submitted a letter stating that he was mistaken in his original belief that his claims were exhausted, as he had yet to appeal the denial of his most recent post-conviction relief petition. (ECF No. 13 at 1-2). He requested another stay to complete the appeals process. (*Id.* at 2). On November 16, 2020, this Court directed Respondents to file a response to Petitioner's renewed stay request. (ECF No. 15). On November 20, 2020, Respondents filed opposition to Petitioner's renewed request for a stay, arguing that a stay should be denied as Petitioner's subsequent PCR petitions were dismissed on procedural grounds by the trial level state court. (ECF No. 16). Respondents submitted their answer on December 11, 2020. (ECF No. 17). This Court granted Petitioner's renewed request for a stay on December 14, 2020. (ECF No. 18).

This matter was reopened on February 9, 2023. (ECF No. 20). Petitioner submitted his reply on July 20, 2023. (ECF No. 24).

## II. LEGAL STANDARD

"The federal habeas statute, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases." *Shoop v. Hill*, 586 U.S. 45, 48 (2019). A federal court may entertain a petition for writ of habeas corpus on behalf of a person in state custody

pursuant to the judgment of a state court "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent."  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  "[A] state-court decision is an unreasonable application of [the Supreme Court's] clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case."  *White v. Woodall*, 572 U.S. 415, 426 (2014).  "This means that a state court's ruling must be 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  *Shoop*, 586 U.S. at 48 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  This Court must presume that the state court's factual findings are correct unless the petitioner rebuts the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

Even if a petitioner meets AEDPA's "difficult" standard, he must still show that any constitutional error had a "substantial and injurious effect or influence" on the verdict.  *Brecht v.*

*Abrahamson,* 507 U.S. 619, 637 (1993).  *See Brown v. Davenport*, 596 U.S. 118, 134 (2022) ("[E]ven a petitioner who prevails under AEDPA must still today persuade a federal habeas court that 'law and justice require' relief.").

## II.  DISCUSSION

### A.  Prosecutorial Misconduct During Summation

Petitioner argues that the prosecutor's summation violated his fair trial and due process rights by "expressing his own mocking disbelief in the defendant's testimony," "aggressively pursuing a motive contrary to the uncontroverted trial evidence," "exhorting the jury that justice requires a conviction," and "grossly distorting his own expert testimony regarding key evidence … while performing an inaccurate and highly prejudicial demonstration."  (ECF No. 7 at 8).  Petitioner did not raise these objections until his post-trial motion, and the Appellate Division rejected the claims on their merits on direct appeal.  *Johnson I*, 2014 WL 7150690, at *3-5.

The duty of a prosecutor in a criminal proceeding is to see that justice is done rather than to secure convictions, and prosecutors must therefore "refrain from [the use of] improper methods calculated to produce a wrongful conviction … ."  *Berger v. United States*, 295 U.S. 78, 88 (1935); *see also United States v. Bailey*, 840 F.3d 99, 124 (3d Cir. 2016).  While a prosecutor "may strike hard blows [during his summation], he is not at liberty to strike foul ones."  *Berger*, 295 U.S. at 88; *Bailey*, 840 F.3d at 124.  A criminal conviction, however, "'is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial.'"  *United States v. Harris*, 471 F.3d 507, 512 (3d Cir. 2006) (quoting *United States v. Young*, 470 U.S. 1, 11 (1985)).  Prosecutorial misconduct will therefore only warrant habeas relief where it "so infected the trial with unfairness as to make the resulting conviction a

denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (internal quotation marks omitted).

> 1. *Denigrating Petitioner's Testimony*

Petitioner argued on direct appeal that the prosecutor acted improperly by "refer[ing] to defendant's testimony as a 'cockamam[ie] story' and 'made-up facts.' Defendant also [took] issue with the tone and expressions used by the assistant prosecutor during summation." *Johnson I*, 2014 WL 7150690, at *3 (second alteration in original). The Appellate Division rejected this argument, stating "the prosecutor's comments, which challenged the credibility of defendant's testimony, were reasonably related to the scope of the evidence presented, and thus, constituted fair comment." *Id.* (cleaned up). This Court agrees.

> Trial counsel argued in summation that Petitioner
>
> did not have to take the stand and did not have to testify before you jurors. He did. Knowing that the testimony he gave during the trial was in many ways contradictory of the statement that he gave to the police in Albany a few days after this incident. That reflects what type of man Anthony Johnson is. He is trying to give you a clear slate about what happened and how it happened.

(ECF No. 17-37 at 7). He later argued that Petitioner's testimony had "the ring of truth." (*Id.* at 9). Therefore, the prosecutor's subsequent comments on Petitioner's credibility were a fair response to trial counsel's summation. *See Young*, 470 U.S. at 12 ("In order to make an appropriate assessment, the reviewing court must not only weigh the impact of the prosecutor's remarks, but must also take into account defense counsel's opening salvo.")

Here, "[t]he prosecutor questioned the believability of defendant's self-defense by referring to testimony from witnesses who saw defendant after the shooting without any signs of fighting. The prosecutor also highlighted defendant's admission that defendant fabricated his statement to the police." *Johnson I*, 2014 WL 7150690, at *3. These comments "concerned [Petitioner's]

*credibility as a witness,* and were therefore in accord with [the] longstanding rule that when a defendant takes the stand, 'his credibility may be impeached and his testimony assailed like that of any other witness.'" *Portuondo v. Agard*, 529 U.S. 61, 69 (2000) (emphasis in original) (quoting *Brown v. United States,* 356 U.S. 148, 154 (1958)); *see also Perry v. Leeke,* 488 U.S. 272, 282 (1989) ("When a defendant assumes the role of a witness, the rules that generally apply to other witnesses—rules that serve the truth-seeking function of the trial—are generally applicable to him as well." (cleaned up)).

The Appellate Division's reasoning follows federal law and is reasonable based on the state court proceedings. Therefore, Petitioner is not entitled to habeas relief on this claim.

### 2. *Misstating Trial Evidence*

Petitioner's second claim of alleged prosecutorial misconduct is that the state made arguments during summation that were not supported by the evidence presented during trial. (ECF No. 7 at 8). He asserts that the state argued that Hammonds wanted to end her relationship with Petitioner because he had not stood up to Garris after the "skirt incident," when in fact their relationship ended because Hammonds felt "like she was 'bad for him.'" (ECF No. 24 at 14). He further argues that the state misstated Campbell's testimony. (ECF No. 24 at 14).

The Appellate Division rejected Petitioner's arguments, stating "it is well-established that prosecutors are allowed to make a vigorous and forceful presentation of the State's case," including its theory as to motive. *Johnson I,* 2014 WL 7150690, at *4 (cleaned up); *see also United States v. Bates*, 46 F. App'x 104, 110 (3d Cir. 2002) ("[T]he government is entitled to summarize its case graphically and forcefully.") It further noted that the trial court instructed the jury that "summation of counsel are not evidence and must not be treated as evidence." *Johnson I*, 2014 WL 7150690,

at *4 (internal quotation marks omitted). Here, the state court reasonably determined that the prosecutor's comments did not rise to the level of a due process violation.

Campbell testified that Petitioner came over to his home, saying that he needed to speak with Campbell because Petitioner "fucked up." (ECF No. 17-33 at 20). Petitioner proceeded to tell Campbell that he shot Garris in the chest after Petitioner saw Garris coming out of a corner store in Linden. *(Id.* at 21). Gocmen later testified that he heard Petitioner speaking with his mother on the ride to New York and summarized what he heard as "he was sittin' in his car waitin' outside. And a guy came out of his house and [Petitioner] walked up to him and shot him once in his chest." *(Id.* at 32). Hammond testified that she initially asked Petitioner to do "something" about Garris after the skirt incident, (ECF No. 17-32 at 25), and her friend Shakema Whitted testified that Petitioner was still upset a couple of weeks after the skirt incident and "saying like he gotta do somethin' about it." *(Id.* at 55). Therefore, the Appellate Division reasonably concluded that the prosecutor's summation was grounded in the evidence and did not rise to the level of a due process violation. *See United States v. Fulton*, 837 F.3d 281, 312 (3d Cir. 2016) (finding that reversal was not required even if prosecution did make errors during summation when alleged errors did not "seriously weaken[] the government's case").

### 3. *Expert Testimony and Demonstration*[3]

Dr. Junaid Shaikh testified on behalf of the State as an expert in forensic pathology and autopsies. (ECF No. 17-34 at 17). He testified that there was "evidence of close range firing" on Garris's body in the form of stippling. *(Id.* at 24). Stippling "is forged by striking of the burned and unburned powder on the surface of the skin creating little … punctate abrasions or—superficial

---

[3] This discussion encompasses a portion of Ground Three as well as Ground Two. (ECF No. 7 at 8-9).

abrasions that surround the skin of the entrance wound." (*Id.*)  When asked "[h]ow close is close range," Dr. Shaikh stated that it depended on "how far the muzzle of the gun is from the surface of the skin." (*Id.* at 25).  "[I]t is always an estimation as to what the distance is of the barrel from the surface of the skin.  So, with a handgun, with regular ammunition, the rule of thumb is usually about—the evidence of close range firing, we see up to 18 inches.  But here, since it is fairly dense, I would say anywhere about six to seven inches from [the] surface of the skin." (*Id.*)  In his summation, the prosecutor stated: "Dr. [Shaikh] tells us a couple of things.  It's close range.  In order to have a stippling it's 18 inches.  That's the max it will go, a foot and a half they had to be.  A foot and a half [Petitioner] got up, ran up, shoots [Garris]." (ECF No. 17-37 at 25).  Petitioner asserts this statement distorted Dr. Shaikh's testimony.

Petitioner further objects to the prosecutor's using a .32 caliber handgun as a prop during his summation.  The handgun was the same caliber and design as the murder weapon, which had not been recovered.  *Johnson I*, 2014 WL 7150690, at *4 n.2.  According to Petitioner, the "prosecutor first took a gun—which was marked for identification purposes only—and said: '.32 caliber is a gun that when you squeeze and you don't know that you pulled the trigger th[e]n that's going to happen.  This is a .32 caliber revolver.'" (ECF No. 24 at 17).  During this statement, "[t]he prosecutor pulled the trigger to make the gun click at least eight times while saying 'pulled the trigger then that's going to happen,' and then added another trigger pull for emphasis between the words '.32 caliber' and 'revolver.'"[4] (*Id.* at 17-18).

A "reviewing court must examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and

---

[4] Petitioner stated on cross-examination that he "squeezed the trigger" but thought that the gun "had to be cocked in order for it to be shot." (ECF No. 17-35 at 35).

the quantum of evidence against the defendant." *Moore v. Morton*, 255 F.3d 95, 107 (3d Cir. 2001). The Appellate Division made this assessment, noting that trial counsel's failure to object "during summation not only deprived the court of an opportunity to take curative action but shows that defense counsel did not find these comments and purported demonstration to be prejudicial." *Johnson I*, 2014 WL 7150690, at *4 (cleaned up). It further concluded that "[t]he assistant prosecutor did not demonstrate how defendant shot the victim. He held the weapon, the same gun that defendant used during his trial testimony, and merely commented about how the shooting occurred based upon the evidence presented at the trial." *Id.* "We are confident, however, that the judge properly instructed the jury that what the attorneys said was not evidence, and that they were the ultimate judges of the facts." *Id.*

These conclusions are reasonable considering the evidence produced at trial. The prosecutor did not argue that Dr. Shaikh testified Petitioner was exactly 18 inches away from Garris when he fired the gun; the prosecutor stated that 18 inches was "the max it will go, a foot and a half they had to be." Put differently, the prosecutor said that Petitioner was *at most* 18 inches away from Garris when Petitioner pulled the trigger. However, this statement would not rise to the level of a due process violation even if Petitioner's interpretation is correct. "At most, this single wayward statement amounts to an ordinary trial error, which is insufficient to constitute a denial of due process." *Werts v. Vaughn*, 228 F.3d 178, 200 (3d Cir. 2000). The jury was properly instructed that "[r]egardless of what counsel said or I may have said recalling the evidence … in this case, it is your recollection of the evidence that should guide you as judges of the facts. Arguments, statements, remarks, openings and summations of counsel are not evidence and must not be treated as evidence." (ECF No. 17-38 at 2); *see also United States v. Werme*, 939 F.2d 108,

117 (3d Cir. 1991) ("The prosecutor is entitled to considerable latitude in summation to argue the evidence and any reasonable inferences that can be drawn from that evidence.").

Petitioner testified that he did not know the gun would go off when the trigger was pulled, and the prosecutor was also permitted to argue this testimony was not credible. When viewed in the context of the entire proceedings and in consideration of all the evidence at trial—including Petitioner's statements to police, statements to Campbell and Gocmen, his request that Whitted provide him with an alibi, and the lack of injuries to Petitioner that would be indicative of a fight— any objectionable statements by the prosecutor did not so infect the trial such that habeas relief would be warranted. The Appellate Division reasonably applied federal law and was objectively reasonable in concluding the remarks did not violate due process. Habeas relief will be denied on this claim.

### 4. *Appeal to Justice*

Finally, Petitioner alleges the prosecutor violated Petitioner's due process rights when he argued to the jury that "justice requires a conviction." (ECF No. 7 at 8). The Appellate Division concluded this argument was "without sufficient merit to warrant discussion in a written opinion," but noted that "a prosecutor may tell jurors to have the courage to render a verdict in accordance with the evidence without jeopardizing defendant's right to a fair trial." *Johnson I*, 2014 WL 7150690, at *4 (citing N.J. Ct. R. 2:11-3(e)(2)) (internal quotation marks omitted). This was a reasonable conclusion.

At the end of his summation, trial counsel appealed to the jury's sense of justice:

> The flag is a symbol of our jurisprudence and what liberty means. … If you can't render a fair verdict the stars on that flag shine less bright each and every time an unfair verdict is rendered. In this case I trust that you will do your duty, hold the prosecutor to his duty, and render a fair and just verdict.

(ECF No. 17-37 at 14). The prosecutor made a similar closing argument:

13

> [T]his isn't about convictions. This isn't about acquittals. We're here for justice. As [defense counsel] said, the flag, the oath, the oath as jurors that you took, you have a job to do, a hard job, and your job is to find justice. … That's your job, justice. Justice here would be to take the facts, not the made-up facts, the facts, put them to the law that the Judge is going to read to you, and you'll see Anthony knowingly, purposefully murdered Sean.

(*Id.* at 31). Here, the prosecutor's comments were a direct response to defense counsel's arguments. *See Yates v. D'Ilio*, No. 14-7823, 2023 WL 2182044, at *4 (D.N.J. Feb. 23, 2023) ("A summation cannot be evaluated in isolation because the State is permitted to respond to allegations made by defense counsel in summation." (internal quotation marks omitted)). "[I]t is evident that the prosecutor's summation demonstrates that 'the prosecution was only meeting the defense on a level of the defense's own choosing.'" *United States v. Lore*, 430 F.3d 190, 214 (3d Cir. 2005) (quoting *United States v. LaSorsa*, 480 F.2d 522, 526 (2d Cir.1973)).

The trial court instructed the jury that "as jurors, it is your duty to weigh the evidence calmly and without passion, prejudice or sympathy. Any influence caused by these emotions has the potential to deprive both the State and defendant … of what you promised them, a fair and impartial trial by fair and impartial jurors." (ECF No 17-37 at 33). "[J]uries are presumed to follow their instructions … ." *Richardson v. Marsh*, 481 U.S. 200, 211 (1987). Therefore, the Appellate Division reasonably concluded that the prosecutor's comments did not amount to a denial of due process. Petitioner is not entitled to habeas relief on this claim.

**B. Jury Instructions**

Petitioner argues the trial court erred by failing to "tailor the jury instructions to the evidence … ." (ECF No. 7 at 9). "The jury charge that was given by the judge was a simple carbon copy model of first degree murder and its lesser included offense, self defense, unlawful possession of a weapon and unlawful use of a weapon." (ECF No. 24 at 7). Petitioner asserts the

charge should have contained more "reference[s] to the specific circumstances of the case" as well as an "accident instruction under the passion provocation count." (*Id.*)

The Appellate Division rejected this challenge on direct appeal. *Johnson I*, 2014 WL 7150690, at *5. "Here, the judge conducted multiple charge conferences and prepared several drafts of the written charge. … There was no prejudice by the judge not further elaborating on the facts, but even if there was, such a contention is mitigated by the arguments set forth by defense counsel during his summation." *Id.*

"The United States Supreme Court and the Third Circuit have made clear that it is not the role of the federal courts to review state court jury instruction rulings that are based on state law." *Howard v. D'Ilio*, No. 14-cv-4758, 2018 WL 1014168, at *5 (D.N.J. Feb. 22, 2018). "A habeas claim will lie only where the jury instruction is so prejudicial as to amount to a violation of due process and fundamental fairness." *Freeman v. Davis*, No. 18-cv-8269, 2021 WL 4705009, at *8 (D.N.J. Oct. 7, 2021) (quotations omitted). "[A] habeas petitioner must demonstrate both (1) that the instruction contained some ambiguity, inconsistency, or deficiency, and (2) that there was a reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." *Williams v. Beard*, 637 F.3d 195, 223 (3d Cir. 2011) (quotations and citations omitted). "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).

"When a jury instruction follows the model jury charge, although not determinative, it is a persuasive argument in favor of the charge as delivered." *McKinnon v. Sweeney*, No. 21-cv-1849, 2023 WL 8714441, at *16 (D.N.J. Dec. 15, 2023) (internal quotation marks omitted). Having reviewed the record, this Court finds that the Appellate Division reasonably concluded that there

was no error in the jury instructions.  First, Petitioner has not demonstrated that the instruction contained an ambiguity, inconsistency, or deficiency.  The trial court instructed the jury that it was "the judges of the facts. … [Y]ou must rely solely upon your understanding and recollection of the evidence that was admitted during the trial." (ECF No. 17-38 at 2).  The jury was further instructed that it was to determine the credibility of the witnesses, (*id.* at 3-4), and that "the defendant [was] entitled to have each count considered separately by the evidence which is relevant and material to that particular charge … ." (*Id.* at 6).  It would have been clear to the jury that it was to base its verdict on the specific evidence produced at trial.

Second, Petitioner has not demonstrated that the jury likely applied the instruction in a way that relieved the State of its burden of proof.  The trial court emphasized throughout its charge that "[t]he burden of proving each element of a charge beyond a reasonable doubt rests upon the State … ." (*Id.* at 2; *see also id.* at 5 ("The ultimate determination of whether or not the State has proven defendant's guilt beyond a reasonable doubt is to be made only by the jury.")).  Petitioner has not submitted any evidence that would suggest the jury did not hold the State to this standard.

Third, Petitioner does not specify what an "accident" instruction for the passion/provocation manslaughter charge would look like.  (ECF No. 24 at 7).  Therefore, he has not met the higher standard necessary to show a due process violation from a missing instruction. *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977) ("Because respondent did not submit a draft instruction on the causation issue to the trial judge … we cannot know with certainty precisely what instruction should have been given … .)

Petitioner is not entitled to habeas relief based on erroneous jury instructions.

### C. Ineffective Assistance of Counsel

Petitioner argues that he received ineffective assistance of trial counsel because trial counsel failed to file a motion to suppress his statement to police, was deficient in the adversarial process, and failed to object to the prosecutor's demonstration during summation. (ECF No. 7 at 6).[5]  To succeed on his ineffective assistance claims, Petitioner must first "show that counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984).  He must then show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

The "pivotal question" in a § 2254 *Strickland* claim "is whether the state court's application of the *Strickland* standard was unreasonable.  This is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).  This Court's review is thus "doubly deferential[.]" *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011).  "When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

#### 1.  Failure to File Motion to Suppress

Petitioner argued in his first PCR petition that trial counsel was ineffective for not filing a motion to suppress his statement to police.  (ECF No. 7 at 6).  The state courts rejected this claim pursuant to *Strickland*.  *Johnson II*, 2018 WL 5273922, at *4.  The Appellate Division "agree[d] with the [PCR] court that the transcript of defendant's interrogation clearly establishe[d] that the

---

[5] Petitioner's other ineffective assistance claims are procedurally defaulted, which this Court will discuss *infra*.

police scrupulously honored defendant's Fifth Amendment rights by stopping all questioning after he requested an attorney.  It was only after defendant himself initiated further communication that the detectives recommenced the interrogation."  *Id.*  "Thus, it would have been a reasonable exercise of professional judgment to forego an application to suppress which would have likely failed."  *Id.*  This is a reasonable application of *Strickland*'s first element.

"The Sixth Amendment right to counsel attaches only at the initiation of adversary criminal proceedings, and before proceedings are initiated a suspect in a criminal investigation has no constitutional right to the assistance of counsel."  *Davis v. United States*, 512 U.S. 452, 456-57 (1994) (internal citation omitted).  "Nevertheless, we held in *Miranda v. Arizona*, 384 U.S. 436, 469-73 (1966), that a suspect subject to custodial interrogation has the right to consult with an attorney and to have counsel present during questioning, and that the police must explain this right to him before questioning begins."  *Id.* at 457.  "If the suspect effectively waives his right to counsel after receiving the *Miranda* warnings, law enforcement officers are free to question him. But if a suspect requests counsel at any time during the interview, he is not subject to further questioning until a lawyer has been made available or the *suspect himself reinitiates conversation*." *Id.* at 458 (emphasis added) (citing *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981)).

The PCR court and Appellate Division reviewed the transcript of Petitioner's interrogations and found that Petitioner reinitiated conversation with officers after invoking his right to an attorney.  *Johnson II*, 2018 WL 5273922, at *4.  Detectives immediately stopped the interview after Petitioner stated "I believe that it is in my best interest not to talk to nobody unless I have a lawyer present."  (ECF No. 17-1 at 85).  The second interview only began after Petitioner made the decision to speak; he confirmed this on the record, saying it had been "[his] choice alone" and "[c]ompletely voluntary."  (*Id.* at 87-88).  He declined the chance to review his *Miranda* rights

again, saying "I know what they are … there's no point." (*Id.* at 88).  One detective asked "[y]ou understand that you don't have any attorney here and you want to continue, correct?"  (*Id.*)  Petitioner responded "[w]hen I get tired of answering questions then that's the end of the interview."  (*Id.*)  The record supports the state courts' conclusions.

Having determined that the state courts reasonably concluded that Petitioner reinitiated the conversation with detectives, this Court finds that the state courts reasonably applied *Strickland* and *Edwards* to the facts when they concluded trial counsel did not err in failing to file the motion to suppress.  "There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument."  *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999).  Therefore, Petitioner is not entitled to habeas relief on this basis.[6]

### 2. Failure to Object to State's Summation

Petitioner further asserts trial counsel was ineffective for failing to object to the "numerous harmful acts" during the prosecutor's summation.  (ECF No. 7 at 6).  The Appellate Division concluded Petitioner had not "satisf[ied] either part of the *Strickland* test because as [the PCR court] correctly noted, the prosecution 'made proper connections and arguments related to the evidence' and defendant 'cannot establish that had the prosecutor omitted the gun demonstration and certain statements there would have existed a reasonable likelihood that the result of the jury verdict would have been different.'"  *Johnson II*, 2018 WL 5273922, at *4 (citing *Strickland*, 466

---

[6] This Court need not consider the prejudice element because Petitioner's claim fails on the first *Strickland* element.

U.S. at 694). "Further, the propriety of the prosecutor's comments during closing was addressed and rejected on defendant's direct appeal." *Id.*

This Court previously concluded that the statements made during the prosecutor's summation and the accompanying demonstration did not rise to the level of a due process violation. *See supra* Part II.A. "An attorney does not provide ineffective assistance by failing to raise meritless objections or file meritless motions." *McGlotten v. Pierce*, 77 F. Supp. 3d 390, 400 (D. Del. 2015) (citing *Sanders,* 165 F.3d at 253). It follows from there that the state courts reasonably applied *Strickland* in concluding there was not a reasonable likelihood that the jury verdict would have been different if the gun demonstration and certain statements had been omitted from the prosecutor's summation. (*See* ECF No. 17-42 at 16). Petitioner is not entitled to habeas relief on this basis.

**D. Procedural Default**

The Amended Petition contains other ineffective assistance of counsel claims that were not raised in Petitioner's initial PCR petition. (ECF No. 7 at 6). In his second PCR petition, filed April 22, 2019, Petitioner argued that trial counsel was ineffective for failing to request or present a jury instruction tailored to the facts of the case, failing to investigate the State's witnesses, and failing to use proper techniques during cross-examination and summation. (ECF No. 17-25 at 6). The second PCR petition was dismissed on January 2, 2019. (ECF No. 17-24 at 1 (citing N.J. Ct. R. 3:22-4)). Petitioner filed his third PCR petition on May 6, 2019, again alleging that trial counsel was ineffective for failing to request or present a jury instruction tailored to the facts of the case, failing to investigate the State's witnesses, and failing to use proper techniques during cross-examination and summation. (ECF No. 19-1 at 2). The third PCR petition was dismissed on procedural grounds on March 11, 2020. (*Id.*) The Appellate Division denied Petitioner's motion

to file an appeal as within time on April 1, 2021.  (ECF No. 19-3).  The New Jersey Supreme Court denied certification on September 23, 2022.  *State v. Johnson*, 252 N.J. 91 (2022).

The procedural default doctrine provides that "federal courts generally decline to hear any federal claim that was not presented to the state courts 'consistent with [the State's] own procedural rules.'"  *Shinn v. Ramirez*, 596 U.S. 366, 378 (2022) (alteration in original) (quoting *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000)).  It "prohibits federal courts from reviewing a state court decision involving a federal question if the state court decision is based on a rule of state law that is independent of the federal question and adequate to support the judgment."  *Fahy v. Horn*, 516 F.3d 169, 187 (3d Cir. 2008).

The state courts did not address the merits of the arguments raised in the second and third PCR petitions because they concluded Petitioner should have raised the arguments in his first PCR proceedings.  (ECF No. 17-24 at 1; ECF No. 19-1 at 2).  "[T]he state procedural law invoked by the state court must be firmly established and regularly followed."  *Massenburg v. Davis*, 704 F. Supp. 3d 540, 553 (D.N.J. 2023).  The Third Circuit has found Rule 3:22-4, which limits the circumstances under which a second or subsequent PCR petition may be filed, to be an independent and adequate state ground for procedural dismissal.  *See Cabrera v. Barbo*, 175 F.3d 307, 313 (3d Cir. 1999) ("[T]he basis for the state court's rejection of the ineffective assistance of counsel claims was state court procedural default as provided by Rule 3:22-4.  Clearly, this disposition was an independent state ground.")  Therefore, Petitioner has procedurally defaulted on his additional ineffective assistance of counsel claims.

"[O]nly rarely may a federal habeas court hear a claim or consider evidence that a prisoner did not previously present to the state courts in compliance with state procedural rules."  *Shinn v. Ramirez*, 596 U.S. 366, 375-76 (2022).  "'Out of respect for finality, comity, and the orderly

administration of justice,' federal courts may excuse procedural default only if a prisoner 'can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law.'" *Id.* at 379 (quoting *Dretke v. Haley*, 541 U.S. 386, 388 (2004); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

To establish cause, Petitioner 'must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" *Id.* (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Petitioner argues that the additional claims were not presented in his first PCR petition due to the ineffective assistance of his first PCR counsel. (ECF No. 17-25 at 6). "With respect to cause, '[a]ttorney ignorance or inadvertence' cannot excuse procedural default." *Shinn*, 596 U.S. at 380 (alteration in original) (quoting *Coleman*, 501 U.S. at 750). However, there is a narrow exception providing that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012).

To determine whether *Martinez* excuses Petitioner's procedural default, this Court must first "decide whether an underlying ineffectiveness claim succeeds considering only the state court record. If not, federal courts should deny relief without more." *Williams v. Superintendent Mahanoy SCI*, 45 F.4th 713, 723-24 (3d Cir. 2022) (citing *Shinn*, 596 U.S. at 390). This Court has reviewed the state court record and concludes that Petitioner cannot succeed on his defaulted ineffective assistance of trial counsel claims. Therefore, *Martinez* does not excuse the procedural default.

### 1. Jury Instructions

Petitioner argues that trial counsel was ineffective for failing to request or present a jury instruction "tailored to the facts of the case." (ECF No. 24 at 7). "The jury charge that was given

by the judge was a simple carbon copy model of first degree murder and its lesser included offense, self defense, unlawful possession of a weapon and unlawful use of a weapon." (*Id.*) Petitioner asserts the charge should have contained more "reference[s] to the specific circumstances of the case" as well as an "accident instruction under the passion provocation count." (*Id.*)

This Court previously found that the Appellate Division reasonably concluded that the jury instructions did not violate Petitioner's due process rights. (*See supra* Part II.B). It logically follows from there that trial counsel did not err by failing to challenge the instructions as given. Because Petitioner's ineffective assistance of counsel claim fails on the state court record, *Martinez* does not excuse the procedural default for this claim. *Williams*, 45 F.4th at 723-24.

### 2. *Failure to Investigate and Cross-Examine State's Witnesses*

Petitioner's next defaulted claim is that trial counsel failed to review discovery and that he was deficient in investigating and cross-examining the State's witnesses, specifically Gocmen. (ECF No. 24 at 10).

"[A] defendant basing an inadequate assistance claim on his or her counsel's failure to investigate must make 'a comprehensive showing as to what the investigation would have produced. The focus of the inquiry must be on what information would have been obtained from such an investigation and whether such information, assuming admissibility in court, would have produced a different result.'" *Brown v. United States*, No. 13-cv-2552, 2016 WL 1732377, at *5 (D.N.J. May 2, 2016) (quoting *United States v. Askew*, 88 F.3d 1065, 1073 (D.C. Cir. 1996)). Petitioner asserts that trial counsel should have obtained information that Campbell and Gocmen were "smoking weed and listening to music" when Petitioner called his mother from the car and that video evidence contradicted Gocmen's testimony that Petitioner waited for Garris. (ECF No. 27 at 11).

23

Petitioner has not shown that trial counsel erred by failing to uncover the weed and music evidence. Notably, Petitioner presents no evidence that this was in fact the case. Additionally, Petitioner could have informed trial counsel himself since he was also in the car. Trial counsel cannot be considered ineffective for not pursuing something that Petitioner knew but did not tell trial counsel about. *See State v. Jones*, 2010 WI App 133, ¶ 33, 329 Wis. 2d 498, 517-18, 791 N.W.2d 390, 400. It is not reasonably likely that this minor detail would have changed the result at trial, especially considering Petitioner made incriminating remarks to Campbell before they got into the car. (ECF No. 17-33 at 20-21).

Petitioner also argues there was "trial evidence that shows the victim on camera at the convenience store six blocks away from his home" that contradicts Gocmen's testimony that Petitioner waited outside for Garris. (ECF No. 24 at 11-12). Petitioner testified that he encountered Garris shortly after getting out of his car on 18th Street. (ECF No. 17-35 at 21). He further testified that Garris attacked him when Petitioner attempted to enter the apartment building to tell Garris's girlfriend about the skirt incident. (*Id.* at 22). As Petitioner admitted that he encountered Garris outside the apartment building, it is not clear how a video of Garris at the store proves that Petitioner was not waiting for him in front of the apartment building. Therefore, he has not shown that there is a reasonable likelihood this evidence would have changed the result at trial. *See United States v. Lathrop*, 634 F.3d 931, 939 (7th Cir. 2011) ("When a petitioner alleges that counsel's failure to investigate resulted in ineffective assistance, the petitioner has the burden of providing the court with specific information as to what the investigation would have produced."); *Judge v. United States*, 119 F. Supp. 3d 270, 286 (D.N.J. 2015).

In all, Petitioner has not shown that trial counsel was ineffective under *Strickland*. Petitioner and his mother presented their versions of the telephone conversations, and the trial

24

court instructed the jury that it was "to determine the credibility of the various witnesses as well as the weight to be attached to their testimony." (ECF No. 17-38 at 2). Additionally, trial counsel used Gocmen's testimony that Petitioner "looked like he was dirty, sweaty, in a fight" to support the self-defense claim. (ECF No. 17-37 at 12). Challenging Gocmen's credibility or memory of the interaction would have undercut this strategy. Therefore, this Court concludes that Petitioner has not carried his burden of proof in showing that trial counsel was ineffective. Because Petitioner's ineffective assistance of counsel claim fails on the state court record, *Martinez* does not excuse the procedural default. *Williams v. Superintendent Mahanoy SCI*, 45 F.4th 713, 723-24 (3d Cir. 2022).

    *3. Summation*

    Finally, Petitioner argues that trial counsel was ineffective during summation for failing to highlight the inconsistencies in the State's witnesses' testimony. Petitioner argues that trial counsel's "closing argument should [have] at least mention[ed] that all of the essential elements of the offense [must] be proved beyond a reasonable doubt. The impression left by the counsel's performance was that there was no viable defense." (ECF No. 24 at 12).

    "The right to effective assistance extends to closing arguments. Nonetheless, counsel has wide latitude in deciding how best to represent a client, and deference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage." *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003) (internal citation omitted). "Judicial review of a defense attorney's summation is therefore highly deferential . . . ." *Id.* at 6. "There is a 'strong presumption' that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than 'sheer neglect.'" *Harrington v. Richter*, 562 U.S. 86, 109 (2011) (citing *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) (per curiam)).

Trial counsel did mention that the State carried the burden of proof: "you have to determine … whether or not the prosecutor has met his burden of proof to prove Mr. Johnson guilty of these charges beyond a reasonable doubt.  And beyond a reasonable doubt is a very difficult and high standard to meet."  (ECF No. 17-37 at 6).  Trial counsel urged the jury to credit Petitioner's testimony over the other witnesses, noting how some of their testimony "contradict[ed] everything that the prosecutor is trying to suggest happened, that Anthony came up, ran up to Sean, put a gun to him at close range, and shot once."  (*Id.* at 8).  He further highlighted the State's failure to conduct certain forensic testing, stating "reasonable doubt comes from the evidence as well as the lack of evidence."  (*Id.* at 10).

"[I]t is critical that courts be 'highly deferential to counsel's reasonable strategic decisions and guard against the temptation to engage in hindsight."  *Marshall v. Hendricks*, 307 F.3d 36, 85 (3d Cir. 2002).  The theme of trial counsel's closing argument was that the State's version of events was implausible and that the facts were more consistent with Petitioner's testimony that he was defending himself from Garris when the gun went off.  The record before this Court "shows merely that the defense strategy did not work out as well as counsel had hoped, not that counsel was incompetent."  *Harrington v. Richter*, 562 U.S. 86, 109 (2011).  Because Petitioner's ineffective assistance of counsel claim fails on the state court record, *Martinez* does not excuse the procedural default.  *Williams v. Superintendent Mahanoy SCI*, 45 F.4th 713, 723-24 (3d Cir. 2022).

### E.  Summary

The Court has reviewed Petitioner's non-defaulted claims on their merits and found that the state courts did not reach decisions that were contrary to, or an unreasonable application of,

established federal law.    Therefore, the Court will dismiss the Amended Petition in part as
procedurally defaulted and deny the Amended Petition in part.[7]

## III.  CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. §2253(c), a petitioner may not appeal from a final order in a habeas
proceeding where that petitioner's detention arises out of his state court conviction unless he has
"made a substantial showing of the denial of a constitutional right."  "A petitioner satisfies this
standard by demonstrating that jurists of reason could disagree with the district court's resolution
of his constitutional claims or that jurists could conclude that the issues presented here are adequate
to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).
Because Petitioner's habeas claims are all without merit for the reasons set forth above, he has
failed to make a substantial showing of a denial of a constitutional right, and his petition is not

---

[7] A district court is required to hold an evidentiary hearing only when the petitioner presents a
*prima facie* showing that 'a new hearing would have the potential to advance the petitioner's
claim.'"  *Porter v. Adm'r of N.J. State Prison*, 2021 WL 2910944, at *4 (3d Cir. July 12, 2021)
(quoting *Siehl v. Grace*, 561 F.3d 189, 197 (3d Cir. 2009)).  "In other words, th[e] Court must first
determine whether … the last state court to reach the issue on its merits, issued a decision that was
contrary to federal law, an unreasonable application of federal law, or ... based on an unreasonable
determination of the facts."  *Murphy v. Att'y Gen. of N.J.*, 2021 WL 3144641, at *4 (D.N.J. July
26, 2021), *reconsideration denied*, 2022 WL 1213354 (D.N.J. Apr. 25, 2022).  "If no, the inquiry
ends there because Petitioner has not satisfied the § 2254(d) standard."  *Id.*  Upon review of the
parties' papers and other relevant materials, this Court finds that the state courts did not reach
decisions that were contrary to, or an unreasonable application of, established federal law.
Accordingly, this Court will deny habeas relief without an evidentiary hearing.

adequate to receive encouragement to proceed further.  This Court therefore denies Petitioner a certificate of appealability.

## IV.  CONCLUSION

For the reasons stated above, this Court will dismiss the Amended Petition in part as procedurally defaulted and deny the Amended Petition in part.  This Court denies a certificate of appealability.  An appropriate order follows.

Date:_____May 12___, 2025

_____
Hon. Susan D. Wigenton
United States District Judge